UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ALLAN LEE HOLT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-CV-87-JRG-DCP ) |
| KILOLO KIJAKAZI[1], Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge of Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] and the Commissioner's Motion for Summary Judgment [Doc. 17].

Allan Lee Holt ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the following reasons, the Court will **RECOMMEND** that Plaintiff's Motion for **Judgment on the Pleadings** [Doc. 15] be **DENIED**, and the Commissioner's Motion for **Summary Judgment** [Doc. 17] be **GRANTED**.

I. **PROCEDURAL HISTORY**

On November 17, 2016, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–403, claiming a period

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

of disability that began on September 7, 2016. [Tr. 154–55, 215]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 96–97]. A hearing was held on January 24, 2019. [Tr. 33–51]. On April 12, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 12–32]. The Appeals Council denied Plaintiff's request for review on March 20, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 28, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since September 7, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease; depressive, bipolar and related disorders; and trauma and stressor related disorders (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally balance, stoop, kneel, crouch and crawl. The claimant can never climb ladders, ropes or scaffolds. The claimant would need to avoid concentrated exposure to vibrations and hazards. The claimant is limited to simple, routine repetitive work. The claimant

2

can have occasional contact with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 10, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 7, 2016, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17–28].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

4

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.   ANALYSIS

Plaintiff argues that the Commissioner's disability decision is unsupported by substantial evidence. [Doc. 16 at 2]. Specifically, Plaintiff contends that the ALJ erred by failing to give "good reasons" for rejecting the medical opinion of Dr. Rebekah Austin—Plaintiff's treating neurologist—who performed an exam and completed a report opining to specific restrictions on Plaintiff consistent with less than a full range of sedentary work. [*Id.*]. Initially, Plaintiff's argument focuses on Dr. Austin's opinion, but Plaintiff later argues that the ALJ erred by also failing to give another treating source opinion—that of Dr. Marilyn Bishop—controlling weight. [*Id.* at 10–11]. Next, Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence. [*Id.* at 2]. Thus, Plaintiff requests for this Court to summarily grant disability benefits to him and order the Social Security administration to do so immediately. [*Id.* at 15].

The Commissioner contends that substantial evidence supports the ALJ's disability decision and that it is free of reversible legal error; thus, the Court should grant the Commissioner's motion and affirm the ALJ's decision. [Doc. 18 at 1]. The Commissioner also argues that the appropriate remedy for Plaintiff were the Court to find that the ALJ did not provide substantial

6

Case 2:20-cv-00087-JRG-DCP   Document 20   Filed 10/01/21   Page 6 of 19   PageID #: 942

evidence to support his decision would be a remand for further evaluation, not a remand for payment of benefits. [*Id.* at 23]. The Court will address both issues raised by Plaintiff in turn.

### A. ALJ's Treatment of the Treating Source Opinions

Plaintiff claims that "[t]he ALJ rejected the opinion of Dr. Austin with absolutely no discussion as to why." [Doc. 16 at 10 (citing [Tr. 28])]. Plaintiff argues that the ALJ made no specific references to the record, exhibits, or offer any explanation for his decision to afford little weight to the opinion of Dr. Austin—Plaintiff's treating physician. [*Id.*]. Plaintiff points to the ALJ's decision in which he provided only that "little weight is given to [the treating source opinions], as they are inconsistent with the level of symptoms, treatment, and observed limitations throughout the medical evidence." [*Id.* (citing [Tr. 28])]. Plaintiff's primary argument is that the ALJ committed reversible error by making no specific reference to Plaintiff's admitted daily activities nor to any physical examination findings, and that—without such an explanation or even a *reference* to the concept of controlling weight—it is unclear whether the ALJ performed the required two-step inquiry when he evaluated the treating source opinions. [*Id.*].

Plaintiff maintains that Dr. Austin's and Dr. Bishop's respective treating source opinions "are supported by medically acceptable clinical and laboratory diagnostic techniques" in that they "[b]oth relied on x-rays, MRI studies and detailed physical exams to reach their conclusions as to the claimant's limitations." [*Id.* at 10–11]. Plaintiff specifically points to a medical source statement from Dr. Austin in which she opined to Plaintiff having various physical limitations associated with his medical conditions. [2] [*Id.* at 11]. As Plaintiff stated in his brief, Dr. Austin

---

[2] The limitations in the report include that Plaintiff: (1) would be unable to walk one city block or more without rest or severe pain in his back or legs; (2) has problems with stooping, crouching, crawling and bending as a result of his back problems and that he would only rarely be able to stoop, crouch, crawl, or bend; (3) would have to recline or lie down 15 minutes or more

7

indicated that she based her opinion as to the limitations included in the medical statement on Plaintiff's history and medical file; physical examinations; progress and office notes; and x-rays, CT Scans, or MRIs. *See* [Tr. 413].

Plaintiff also claims that the treating source opinions are not inconsistent with the substantial evidence of record as the ALJ determined in his decision. [Doc. 16 at 11]. Plaintiff disputes the ALJ's findings regarding his daily activities as follows:

> He mentions the claimant can shop (but failing to recognize only grocery shopping when he uses a handicap buggy) mowing (without addressing the fact he can only do it for 15 minutes and his neighbor does most of the mowing), washes dishes ( though must put his weight on his right let the entire time to relieve the pain in his left leg and can only stand for 10 minutes at a time), vacuums ( but ignores the fact he only lives in a mobile home, can only stand for 10 minutes at a time and reported to the examiner that he tries to "help" with the vacuuming but finds it hurts his back )(TR 351) He can prepare simple meals but doesn't address the time needed to prepare a meal or any mention of what is prepared. He mentioned specifically the claimant stated on the February 2017 consultative examination that the claimant mentioned walking out of boredom. (TR 30) The ALJ mischaracterized the statement indicating he walks regularly. The statement was that he often walks to floor out of boredom. (TR 351) Clearly this was a typographical mistake and should have read "walks the floor out of boredom."

[Doc. 16 at 11]. In essence, it appears that Plaintiff is arguing that he would have come to different conclusions concerning the evidence of Plaintiff's daily life than what the ALJ did.

---

multiple times during an 8 hour work day due to the pain and discomfort in his back; (4) would be capable of sitting only for a period of 4–6 hours in an 8 hour work day with one 1-hour lunch break and two 15-minute breaks included; (5) would require a sit/stand option as needed due to his physical impairments; (6) would only be able to stand and/or walk 1–2 hours in total within an 8 hour work day with standard breaks; (7) would frequently experience pain severe enough to interfere with his concentration and attention which he would need to perform simple work tasks. *See* [Tr. 412–13].

8

Plaintiff states that Dr. Austin examined Plaintiff on three occasions over six months apart, and on "each occasion she reported muscle spasms and positive straight leg raise on exam and described on two occasions the claimant as having to move around continuously to change position to get comfortable and was walking with an antalgic gait." [*Id.*]. Plaintiff maintains that Dr. Austin's diagnosis and opinion as to Plaintiff's limitations did not vary from her initial visit with plaintiff on December 16, 2016 to her last visit with him on November 26, 2018. [*Id.* at 12]. Plaintiff states that Dr. Austin maintained limitations of less than 15 pounds lifting, limited sitting/standing to 1–2 hours with frequent rest and repositioning allowed. [*Id.*]. Plaintiff argues that Dr. Austin's 2019 report is consistent both with her previous reports and with a previous physician who treated Plaintiff for workers' compensation. [*Id.*]. Plaintiff concludes this argument by stating that the physician who referred Plaintiff to Dr. Austin also opined to Plaintiff not being able to lift over 15 pounds with no repetitive bending, twisting or turning movements, and no squatting. [*Id.* (citing [Tr. 310])].

The Commissioner argues that the ALJ sufficiently explained why he gave little weight to the opinions of Plaintiff's treating physicians. [Doc. 18 at 16]. Additionally, the Commissioner states that "[n]othing in the Commissioner's rules required the ALJ to adopt the opinions of Dr. Austin or Bishop, as the ALJ reasonably found that they failed to meet the standard for affording controlling weight to their opinions." [*Id.*]. The Commissioner maintains that Plaintiff has focused solely on one vague statement by the ALJ,³ overlooking the ALJ's considerable analysis from earlier in his decision. [Doc. 18 at 18]. The Commissioner stresses that "the ALJ need not refer

---

³ *See* [Tr. 24 ("Little weight is given to [the treating source opinions], as they are inconsistent with the level of symptoms, treatment, and observed limitations throughout the medical evidence")].

9

again to specific inconsistencies of a treating physician's opinion when those inconsistencies were listed earlier in the decision." [*Id.* (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016))].

In his brief, the Commissioner points to a few specific instances where the ALJ found the treating source opinions to be inconsistent with the record as a whole. For example, the Commissioner points to the ALJ's discussion of Plaintiff's x-ray and MRI imaging—which revealed multilevel disc herniation resulting in moderate narrowing of the central canal. [*Id.* at 20 [citing [Tr. 20–21])]. The Commissioner argues that the ALJ found the treating source opinions to be inconsistent partially because the imaging evidence—which indicated that Plaintiff's functional work capacity had decreased to *some* extent—did not correlate to the "magnitude of erosion" and limitations recommended by Drs. Bishop and Austin. [*Id.*]. Furthermore, the Commissioner claims that the ALJ discussed how Plaintiff's demonstration of periodic physical abnormalities—including limited range of spinal motion, back tenderness, among other things—varied considerably over time. [*Id.*]. As well, treatment records showed that at certain points Plaintiff had full leg strength, no muscle atrophy, among other similar findings, and Plaintiff also demonstrated the abilities to walk freely and normally, control his bladder and bowels, and maintain good posture. [*Id.*]. Thus, the Commissioner argues that there is ample evidence in the record supporting the ALJ's determination that the opinions of Plaintiff's treating physicians were inconsistent such that they should only be afforded little weight.

The Commissioner asserts that the ALJ provided another "good reason" for discounting the treating source opinions and supporting his ultimate RFC finding through his discussion of the Plaintiff's course of treatment. [*Id.* at 21]. The Commissioner makes several arguments here, including that Plaintiff was (1) never prescribed a device to assist with ambulation and was able

10

to move freely, (2) never advised to use pain modalities like a brace or transcutaneous electrical nerve stimulator ("TENS") unit, and never advised to seek aggressive medical treatment or surgical intervention for his conditions. [*Id.*]. The Commissioner argues that Plaintiff's course of treatment was conservative in that it only consisted of medication management, tobacco cessation, weight loss, and periodic injections. [*Id.* (citing [Tr. 342–43, 353–54, 409–10])]. Thus, the Commissioner argues that Plaintiff's conservative course of treatment was considered by the ALJ, contributing to his finding that the restrictions imposed by Drs. Bishop and Austin were inconsistent while also supporting his RFC finding.

Finally, the Commissioner argues that the ALJ presented another "good reason" because he considered Plaintiff's admitted daily activities, which were also inconsistent with the treating source opinions and bolstered the ALJ's RFC finding. [*Id.* at 21–22]. The Commissioner cites to a recent Sixth Circuit opinion, providing that "an ALJ may discredit a doctor's opinion based on other evidence in the record, such as activities that are inconsistent with the opinion." [*Id.* at 22 (quoting *Rottmann v. Comm'r of Soc. Sec.*, No. 19-2205, 2020 WL 3397744, at *3 (6th Cir. June 19, 2020))]. Specifically, the Commissioner provides that

> Plaintiff prepared simple meals, helped care for a dog, shopped for groceries using a sit-down cart, and watched television for much of the day (Tr. 26 *referring to* Tr. 46, 228-32) . . . . [Plaintiff] vacuumed the floor, and he washed dishes while keeping pressure off is leg for pain mitigation (Tr. 26 *referring to* 42-43, 347) . . . . Plaintiff mowed his lawn with a riding mower . . . [and] he checked the oil on his truck weekly—activities that the ALJ properly considered in his analysis of the opinions and in assessing the RFC (Tr. 26 *referring to* Tr. 229, 367, 371).

[Doc. 18 at 22]. Thus, the Commissioner argues that Plaintiff's admitted daily activities did not correlate with the limitations and opinions of the treating physicians. Therefore, the Commissioner

11

asserts that the ALJ appropriately found the treating source opinions to be inconsistent and undeserving of controlling weight under the treating physician's rule.

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[4] However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

12

to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).].

The Court agrees with the Commissioner and finds that there is substantial evidence to support the ALJ's determination that the opinions of Drs. Bishop and Austin were undeserving of controlling weight pursuant to the treating physician rule. The Court finds that Plaintiff's argument that the ALJ provided *no* discussion as to the weight given to the treating physician's opinions is without merit as there were in fact "good reasons" for the ALJ's evaluation that were discussed in the decision. Most importantly, the ALJ found inconsistency as to the treating source opinions in various parts of the record.

Inconsistency is one of the "good reasons" that an ALJ can rely on when affording less weight to a treating medical physician's opinion. *See* 20 C.F.R. § 404.1527(c)(4); *see also*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285–86 (6th Cir. 2009); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) ("The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision."). As the Commissioner argued, the ALJ discussed and considered Plaintiff's medical record. This included: prior imaging evidence; physical abnormalities suffered by Plaintiff that varied considerably over the relevant period; treatment records indicating Plaintiff had full leg strength and lack of muscle atrophy among other things; and objective reports of Plaintiff's

13

physical abilities. [Tr. 20–24]. This is the first of the "good reasons" for the ALJ's evaluation of the treating opinions.

The Court also notes that even when a plaintiff would interpret the medical evidence differently—as Plaintiff would in this case—, the Court will find no error if it finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Given the substantial evidence in the record that has already been discussed, the Court finds that the ALJ was within his "zone of choice" in this case.

The ALJ also properly considered Plaintiff's course of treatment, finding that the conservative treatment plan was also inconsistent with the restrictions from Drs. Bishop and Austin.[5] Therefore, the Court finds that the ALJ properly considered Plaintiff's conservative course of treatment in discounting Dr. Bishop's and Dr. Austin's opinions. *See, e.g., Lester v. Soc.*

---

[5] *See* [Tr. 26 ("although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. Additionally, the record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged . . . .")].

*Sec. Admin.,* 596 F. App'x 387, 389 (6th Cir. 2015) (finding the ALJ reasonably discounted a treating physician's opinion, in part, because the claimant was receiving conservative treatment).

Lastly, the Court finds that the ALJ gave yet another "good reason" for discounting the treating source opinions because he found that the limitations imposed by Drs. Bishop and Austin conflicted with Plaintiff's admitted daily activities. *See Rottman v. Comm'r of Soc. Sec.*, No. 19-2205, 2020 WL 3397744, at *3 (6th Cir. June 19, 2020) ("an ALJ may discredit a doctor's opinion based on other evidence in the record, such as activities that are inconsistent with the opinion."). Specifically, the ALJ provided:

> the claimant reported he was capable of simple meal preparation and he checked the oil in his truck weekly. The claimant reported he went out with his dog, he could go out alone, he could drive, he shopped and he could count change. The claimant reported he paid his bills online and he could shop online. The claimant stated his hobbies included watching TV, and he socialized in person and on the phone . . . .

[Tr. 26]. This is also a "good reason" to explain why the ALJ gave less than controlling weight to the opinions of Plaintiff's treating physicians.

The Court finds that the ALJ's analysis satisfied the regulatory requirements for not affording Dr. Bishop's and Dr. Austin's opinions with controlling weight. The ALJ's reasons were "supported by the evidence in the case record" and were "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See* 20 C.F.R. § 404.1527. *See also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549–50 (6th Cir. 2014) (treating pain management specialist's opinion not entitled to controlling weight where it was inconsistent with his treatment notes and imaging studies results); *Davidson v. Comm'r of Soc. Sec.*, No. 1:12-cv-683, 2013 WL 5670977, at *6–8 (S.D. Ohio Oct. 15, 2013), *report and recommendation adopted*, 2014 WL 1271023 (S.D. Ohio Mar.

15

27, 2014) (The ALJ's finding that the treating physician's opinion was not supported by his own treatment notes was substantially supported by the record); *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) ("Unlike the cases where [the Sixth Circuit has] held that the ALJ failed to state 'good reasons' for rejecting the treating physician's opinion, here the ALJ did not merely cast aside the treating physician's opinion without explanation."). Therefore, remand is unnecessary in this case.

### B. ALJ's RFC Finding

Plaintiff also argues that there is "no evidence alluded to in the ALJ's decision that supports the Residual Functional Capacity assessment as found by the ALJ"—with the ALJ finding that Plaintiff could perform work at a light level of exertion. [*Id.* at 12]. Plaintiff alleges that the ALJ never referred to a specific medical record to support his finding, and the only limitations discussed by the ALJ were those of Drs. Austin and Bishop. [*Id.* (citing [Tr. 25, 27])]. Further, Plaintiff contends that the ALJ referenced no evidence to contradict the limitations set by Drs. Austin and Bishop and that the ALJ failed to reference any evidence that Plaintiff could lift up to a light level or stand/walk six hours out of an 8-hour day. [*Id.* at 12–13].

Plaintiff also states that if the ALJ relied on the opinions of state agency physicians Dr. Peter Arrowsmith or Dr. Kanika Chauduri in making his decision, he failed to state that he was so relying or even mention the doctors by name. [*Id.* at 13]. Plaintiff also contends that, in any case, Dr. Arrowsmith "never reviewed or saw any records after the first visit with Dr. Austin and certainly didn't have the knowledge of the claimant's condition as did Dr. Austin" and "makes no mention of the limitations placed on the claimant by Dr. Austin in his review. [*Id.* (citing [Tr. 64])]. Plaintiff also claims that Dr. Chauduri's notes do not reflect that she reviewed any records after Plaintiff's first visit with Dr. Austin and that she misinterpreted the limitations—incorrectly

16

crediting them to a Dr. Dulebohn even though the opinion was Dr. Austin's. [*Id.*]. Plaintiff stresses that the ALJ did not list either of the reviewing agency physicians by name in his decision, and that neither of the physicians had reviewed all the records nor had access to the exams of either of Plaintiff's primary care physicians because they were obtained after Plaintiff's last two appointments with Dr. Austin. [*Id.*].

Plaintiff claims "neither from any statements by the [Plaintiff], the medical evidence nor the statements of the physicians whom [sic] have examined [Plaintiff] could one conclude [Plaintiff] could perform a light level of work on a consistent basis . . . ." [*Id.* at 15]. On the contrary, Plaintiff contends that the evidence in the record is consistent with the opinions of the treating sources and suggests that Plaintiff's RFC is less than what the ALJ determined. [*Id.* at 14–15].

The Commissioner does not separate his arguments against the two issues raised by Plaintiff; thus, much of his argument as to why the Commissioner's evaluation of the treating source opinions was appropriate is the same as his argument for why the Commissioner's RFC finding was supported by substantial evidence. In any case, the Commissioner asserts that the ALJ pointed to specific medical evidence to support his RFC finding—that Plaintiff could perform a range of light work with some additional non-exertional limitations. [Doc. 18 at 16]. The Commissioner's discussion of that evidence is detailed in the previous section. Generally, the Commissioner alludes to the ALJ's reliance on the objective medical evidence, Plaintiff's medical history and conservative treatment plan, and his daily activities. [*Id.* at 16–17].

The Court agrees with Commissioner and finds that the ALJ's RFC finding is supported by substantial evidence in the record, as was discussed in the previous section, and that there were no legal or procedural requirements violated. In addition to the previously discussed evidence, the

17

Court finds that the ALJ based his opinion partly on "the administrative findings of fact made by State Agency medical physicians and other consultants[,]" weighing them as statements from non-examining expert sources. [Tr. 26]. The ALJ found that the State Agency adequately considered the evidence of record and presented findings that were consistent with and supported by the objective medical evidence and evidence from other treatment sources. [*Id.*]. The ALJ incorporated limitations into the Plaintiff's RFC to the extent that they were consistent with and supported by the record. [*Id.*].

Although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), they are not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). However, the Court cautions against an ALJ merely reviewing the entire medical record and summarily stating that an opinion or administrative finding was inconsistent with the medical record, without citing to specific examples that conflict with the opinion. *See, e.g.*, *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021) ("The ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record."), *report and recommendation adopted by*, 2021 WL 2530846 (N.D. Ohio June 21, 2021); *Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *7 (S.D. Ohio Mar. 29, 2021) ("In the absence of any explanation of the supportability and consistency factors, as the regulations require, the Court is unable to conclude that the ALJ's consideration of Dr. Ghoorkhanian's opinion is supported by substantial evidence.").

Ultimately, the Court finds that the ALJ appropriately considered all the medical opinions of record—including those of Drs. Bishop and Austin—, and the Court is able to logically follow

18

his discussion of the medical record and opinions to his evaluation of the treating source opinions and his conclusions in the RFC analysis. *Cf. White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Here, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusions in his RFC analysis and in his evaluation of the opinions of Drs. Hochman and Vargo."). As detailed above, the ALJ found that the medical record did not support the more restrictive limitations set forth in the treating source opinions. Therefore, neither issue raised by Plaintiff gives the Court cause to remand the final decision of the Commissioner for reconsideration by the ALJ nor for the immediate granting of benefits to Plaintiff.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[6] Plaintiff's Motion for Judgment on the Pleadings [**Doc. 15**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **GRANTED**.

Respectfully Submitted,

Debra C. Poplin
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).